### ROMAINE et al. v. UNION INS. CO. et al.

#### (Circuit Court, W. D. Tennessee. April 22, 1893.)

#### No. 404.

ACTION AGAINST NONRESIDENT INSURANCE COMPANY—JURISDICTION OF COURT.
Application for insurance was made to an insurance broker in Memphis, Tenn., who applied by mail and telegram to one N., another insurance broker at Cincinnati, Ohio, for the same insurance. N. procured policies from companies having no office nor agents in the state of Tennessee, forwarded the policies to the broker at Memphis, and shared with him the commissions on the premiums. N. was agent of one of these companies at Cincinnati, but he neither had authority to appoint, nor did it appear that he had appointed, subagents at Memphis. No other transactions by defendant companies in Tennessee were shown. *Held*, that defendant companies were not "doing business" in Tennessee, or "found" or resident there, so as to render them liable to substituted service, or to service upon the Memphis brokers.

In Equity. Bill by B. F. Romaine & Co. against the Union Insurance Company and others. Motion to quash service of process and to dismiss the cause. Granted.

Statement by HAMMOND, J.:

This cause was brought by the filing of plaintiffs' original bill in this court in March, 1886, against the Union Insurance Company, the Insurance Company of the State of Pennsylvania, both "corporations and citizens of the state of Pennsylvania," and the Merchants' & Manufacturers' Insurance Company, "a corporation and citizen of the state of Ohio;" the bill alleging defendants to be "residents and citizens of the various states" set forth in the caption," and plaintiffs to be "residents of the city of New York and citizens of the state of New York." There were other defendants to the bill, but the cause has been dismissed as to them. Service on these defendants was attempted respectively by the marshals in Ohio and Pennsylvania, under writs directed to the marshal of this district, but the same was set aside by the court. Afterwards, under alias process, service was made at Memphis, Tenn., by the marshal here, "personally on Herman Bensdorf, as agent of the within-named Union Insurance Company, and on James E. Beasley and Colton

Greene, (Greene & Beasley,) as agents of the within-named Insurance Company of Pennsylvania and of the Merchants' & Manufacturers' Insurance Company of Ohio."

Complainants in November, 1886, filed an amended bill, upon which process issued against each defendant under the twelfth equity rule, and the writs were returned without any service on the Union Insurance Company, with service on "J. E. Beasley, agent for the Insurance Company of the State of Pennsylvania;" and, under the subpoena commanding the marshal to summon the Ohio company, the return shows a service only upon "Colton Greene, agent of the Insurance Co. of State of Pennsylvania." Again, alias writs of subpoena issued to require defendants to answer the amended bill. Those for the Ohio company and the Insurance Company of the State of Pennsylvania were each returned with service on "J. A. Harpham, chief agent," and that for the Union Insurance Company with service simply on "H. Bensdorf," he not being named as agent by the officer. None of the persons so served with process as "agent" was named as agent in the writs, nor in the original or amended bills. By permission of the court the Merchants' & Manufacturers' Insurance Company appeared "specially and solely to object to the jurisdiction and power of this court to compel it to appear and answer in the aforesaid action," and filed a formal plea to the jurisdiction of the court, alleging that at the times of the aforesaid service defendant "was not an inhabitant nor found" in this state or district; that it was an Ohio corporation, with its domicile in that state, and an office at Cincinnati, where it "transacted all its business;" that it never was "an inhabitant of nor a resident of, nor present in nor found" in, this state or district; that it never "was doing business" in Tennessee, and never had "any place of business, office, officer, agent, nor any transaction in respect to its business, in whole or in part," in this state; "neither did it have any transaction with persons or concerning any property situated in this state, through any agency whatever, acting for it within this state, but its business was done in the place of its domicile" in Ohio. The plea further avers that the policy sued on "was issued by the company at its home office in Cincinnati, Ohio, upon an application made" at its home office by an insurance broker, and that the policy was delivered to the broker there, and the payment of the premium made by him; and "that the whole transaction was had in the state of Ohio," the policy having been issued "solely upon the application" of the Cincinnati broker. This plea is sworn to by the president of the company.

The two Pennsylvania companies, by their counsel, also appeared "for the sole purpose of moving the court to quash the returns as to said companies, on the ground that it appears on the face of the bill and proceedings that said companies had no residence in the jurisdiction of this court, and no agent within said jurisdiction;" and a stipulation between plaintiffs and these two companies has been filed, "that this case may be heard on the motion to dismiss, and to quash the service of the process as to the above-named defendants, as if a formal plea had been filed properly and in due form, putting in issue all matters of objection to the service of process or subpoena, and to the jurisdiction of the cause, so far as it affects the said two defendants;" and all the defendants have also joined in a formal motion to dismiss the cause for want of proper service upon them.

T. W. & R. G. Brown, for complainants.

Heiskell & Heiskell, for Pennsylvania defendants.

Taylor & Carroll, for Ohio defendant.

HAMMOND, J., (after stating the facts.) This action was brought to recover loss on inland marine insurance policies issued in February, 1883, and covering 180,000 staves on barges in the Hatchie river, in this state; the same to be floated down the Hatchie and Mississippi rivers to Memphis, and thence towed by steamer to New Orleans, La. Each of the three policies was for $6,000. The Merchants' & Manufacturers' Insurance Company's

policy shows that it was issued at Cincinnati, Ohio, "at their office in the city of Cincinnati, state of Ohio," where it was signed by the president and secretary of the company, a corporation of that state. The certificate of insurance of each of the two Pennsylvania defendant companies provides that it "is not valid unless signed by the authorized agent for this company at Cincinnati, Ohio," and is signed, "George W. Neare, Agent," and bears on its face the statement, "Dimick & Crosby, General Agents, Buffalo, N. Y." Many affidavits have been filed by the parties on the issue presented by the pleas in abatement here, and several depositions have been taken, under stipulation, bearing upon the subject, and from all this proof, and from the record, the court finds the following facts:

1. That on January 2, 1882, the two Pennsylvania companies entered into a written contract or agreement with Dimick & Crosby, of Buffalo, New York, whereby they were appointed general agents of said companies "for the transaction of a general inland insurance business on the New York state canals, the great western and inland lakes, and the Illinois canals, and the western and southern rivers;" such agency to be located either at Buffalo, New York city, or Chicago. These general agents were thereby authorized to appoint "local agents" of the companies "in the above-mentioned territory," who were to be commissioned by the companies. Under this authority these general agents appointed George W. Neare agent for said companies at Cincinnati, Ohio, but no power was conferred upon him to appoint agents or subagents. Neither Greene, Beasley, Greene & Beasley, Harpham, nor Bensdorf, nor any one else, was ever appointed agent of said companies at Memphis nor in Tennessee by the companies themselves, nor by their general agents at Buffalo, nor by Neare at Cincinnati.

2. The Ohio defendant was a corporation of that state, and never appointed an agent in Tennessee, nor had an agency in the state, nor transacted any business with any persons whatever at Memphis, and its business is carried on exclusively at its home office in Cincinnati. The policy in question here was issued at the company's home office to George W. Neare, a marine insurance broker in Cincinnati, who verbally made the application in person to the president of the company, to whom the policy was delivered in its office upon payment of the premium by Mr. Neare, who was the only person known in the transaction to the officers of the company. The company paid no brokerage or commission except to Neare, but he paid a part of it to Horpham at Memphis, from whom he received the direction to insure, and to whom he sent the policy, and by whom the draft for payment of the premium was transmitted. This draft was drawn by one Leonard, the Memphis agent of the New York complainants, upon them, but to whose order it was payable does not appear.

3. Neare issued the certificates covered by the policies of the Pennsylvania companies and signed them at Cincinnati. It was done upon the application of J. A. Harpham, of Memphis, for insurance on the staves, the application having been sent by

him to Neare by mail, and the certificates of insurance returned by mail to Harpham by Neare, who was the agent of the companies at Cincinnati. Harpham transmitted by mail the draft of Leonard on Romaine & Co. for the premiums on these policies, also. All the business done by the Ohio company or Neare, in and about all this insurance, was transacted at Cincinnati, or by correspondence between Neare in that city and Harpham at Memphis, Tenn.

4. J. W. Leonard, or his bookkeeper, Mr. Titus, first applied to Greene & Beasley, insurance agents at Memphis, for marine insurance upon these staves, and was told that the companies they represented did not carry that kind of insurance. They occupied an office jointly with two Memphis local insurance companies, of which Harpham had been an adjuster for many years, and he occupied the same office. There is much dispute as to the exact conversations which took place in this office between Leonard or Titus and Harpham; but, as a result of it all, Hr. Harpham, who had no business connection whatever with Greene & Beasley, applied to Neare by mail and telegram for this insurance, procured the rates from him, and received from him by mail the policy and certificates, delivered them to Leonard or Titus, and transmitted to Neare the drafts in payment of the premiums, and was paid by Neare 5 per cent. of the same as his compensation for services in the premises. After the loss, Mr. Leonard handed the protests to Harpham, who sent the same by mail to the broker at Cincinnati. The evidence does not show any other instance of insurance of property in this state by any of the said defendants.

Under these facts, and upon this record, the case falls strictly within the principles enunciated in the opinion of this court in the case of Hazeltine v. Insurance Co., 55 Fed. Rep. 743, (just filed,) and it is unnecessary to consider the questions of defective service, nor whether the marshal's returns may be now amended so as to cure such defects as might be found to exist, nor whether the substituted service prescribed by the statutes of this state has been effected. The provisions of the act of the legislature of Tennessee, passed March 29, 1887, (Acts 1887, c. 226, p. 386,) do not seem to have been complied with here, and hence we are not called upon to decide whether the facts found above would constitute "doing business" within this state by these defendants under the definition of that act, which includes "any transaction with persons or any transaction concerning any property situated in this state through any agency whatever acting for it within the state." A decree will therefore be entered sustaining the pleas in abatement, and granting the motions to quash the service attempted to be made on these defendants, with costs against plaintiffs and the sureties on their prosecution bond; and it is accordingly so ordered.